PLAZA GROUP PROPERTIES, LLC,
Robert W. Allen, and Fuel in Dale,
LLC, Appellants–Defendants,

v.

SPENCER COUNTY PLAN COMMIS-
SION and Spencer County Board of
Commissioners, Appellees–Plaintiffs.

No. 74A01–0703–CV–145.

Court of Appeals of Indiana.

Dec. 13, 2007.

John D. Cox, Lynch, Cox, Gilman & Mahan PSC, Louisville, KY, H. Louis Sirkin, Jennifer M. Kinsley, Scott R. Nazzarine, Sirkin, Pinales & Schwartz LLP, Cincinnati, OH, Attorneys for Appellants.

John G. Wetherill Rockport, IN, Attorney for Spencer County Plan Commission.

Francis H. Lueken, Jr., Ferdinand, IN, Attorney for Spencer County Board of Commissioners.

Scott D. Bergthold, Chattanooga, TN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

The parties' dispute requires us to determine the constitutionality of portions of Spencer County's sexually oriented business ordinances. While there is an abundance of caselaw addressing the constitutionality of similar ordinances, discerning the relevant precedent has been compared to "reading the tea leaves." *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 134 (6th Cir.1994).

Appellants-defendants Plaza Group Properties, LLC, Robert W. Allen, and Fuel in Dale, LLC (collectively, Plaza), appeal the trial court's grant of summary judgment in favor of appellees-plaintiffs Spencer County Plan Commission and Spencer County Board of Commissioners (collectively, the County). Plaza first argues that it was lawfully using the property when the County enacted the sexually oriented business ordinances; thus, it is

entitled to continue its lawful use even though the newly enacted ordinances prohibit it from operating a sexually oriented business on the property. Alternatively, if we find that Plaza's use was nonconforming at the time the ordinances were enacted, Plaza urges us to find the sexually oriented business ordinances unconstitutional pursuant to the First Amendment to the United States Constitution.

Because we conclude that there is not a genuine issue of material fact that Plaza made more than $5,000 of renovations to the property without receiving a building permit, Plaza is not entitled to lawful nonconforming use status on the property. And because we determine that the portions of the sexually oriented business ordinances at issue do not unconstitutionally burden protected speech, we reject Plaza's argument that the challenged ordinances are unconstitutional. Therefore, we conclude that the trial court properly granted summary judgment in favor of the County and it was within the trial court's discretion to enter a permanent injunction prohibiting Plaza from operating a sexually oriented business on the property. Thus, we affirm the judgment of the trial court.

### FACTS [1]

Plaza purchased a truck stop (the property) in Spencer County on October 21, 2005. The property consists of a main building, a motel, and a convenience store and is located "off a highway interchange in an extremely rural area with only one residence within a mile." Appellants' Br. p. 22. Without receiving a building permit, Plaza began remodeling the main building in late October.

After learning about the remodeling, the County issued a stop-work order for the property on November 16, 2005. On December 8, 2005, the County filed a complaint for an injunction against Plaza, alleging that Plaza was violating the County's building and zoning ordinances. The trial court issued a temporary restraining order based on Plaza's failure to comply with the County's building ordinances and enjoined Plaza from using the main building to conduct, maintain, or continue to operate a sexually oriented business.

Theresa Cail, the County Administrator, attests that Plaza is the first sexually oriented business to seek operation in Spencer County in the past twenty years. Appellants' App. p. 210.[2] Prior to Plaza's purchase of the property, the County's zoning ordinances required sexually oriented businesses to obtain a special exception permit but did not specifically regulate businesses of this nature. Thus, the County Plan Commission held a public hearing on November 10, 2005, and formally adopted ordinance 2005–10 on November 28, 2005, which provides, in relevant part, that "[n]o person shall operate or maintain an Adult Organization[3] within 1000 feet

1. We held oral argument in Indianapolis on November 2, 2007. We commend counsel for their excellent oral presentations and we thank the Carmel High School students and staff who attended the argument.

2. Plaza's appendices do not include the County's complaint, Plaza's answer and counterclaims, or numerous other relevant documents that the County submitted to the trial court during the underlying litigation. We direct counsel's attention to Indiana Appellate Rule 50(A)(2)(f), which requires that the ap-

pellant include in the appendix "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal...." It is inappropriate for an appellant to include only its own documents in the appendix; instead, it must include *all* relevant documents, including those filed by the opposing party.

3. The ordinance defines "Adult Organization" as an "adult bookstore, adult motion picture theater, adult mini motion picture theatre, adult motion picture arcade, adult cabaret,

of any church, school, daycare center or preschool, or residence [in Spencer County]" (the 1,000–foot restriction). *Id.* at 145–46. The ordinance also limits an adult organization's hours of operation and prohibits nudity as provided in Indiana Code section 35–45–4–1.[4]

On December 28, 2005, the County adopted ordinance 2005–11, which details additional licensing requirements for sexually oriented businesses in the County and also contains the 1,000–foot restriction. *Id.* at 167. Specifically, the ordinance provides that "[i]t shall be unlawful for any person to operate a sexually oriented business in Spencer County without a valid sexually oriented business license." *Id.* at 157.

It is undisputed that Plaza seeks to run a sexually oriented business and that its property is within 1,000 feet of a residence. On January 4, 2006, the County filed an amended complaint for injunction, requesting that the trial court enter a temporary restraining order, preliminary injunction, and permanent injunction against Plaza because Plaza had failed to apply for and obtain a building permit before renovating its property. Additionally, the County alleged that Plaza had violated ordinances 2005–10 and 2005–11 by not applying for and obtaining a sexually oriented business permit.

Plaza and the County entered into an agreed preliminary injunction order on January 25, 2006, which enjoined Plaza from occupying the property's main building before obtaining a building permit. Furthermore, the parties agreed that Plaza would not "operat[e] a sexually oriented business, as defined in Spencer County Ordinance No.2005–11, on any of the [property]." *Id.* at 172.

Plaza answered the County's complaint on January 30, 2006, and filed a counterclaim, alleging that ordinances 2005–10 and 2005–11 are unconstitutional on their face and as applied pursuant to the First Amendment to the United States Constitution and "related provisions of the Indiana Constitution." Appellees' App. p. 52–53. The underlying litigation has focused exclusively on the ordinances' constitutionality pursuant to the federal constitution.

The County moved for summary judgment on May 8, 2006.[5] Plaza filed a cross-motion for summary judgment on June 15, 2006. The trial court held a hearing on the parties' motions for summary judgment on February 20, 2007, and entered partial summary judgment in the County's favor on March 9, 2007, finding as follows:

> The Court will first address the constitutionality of Spencer County Ordinances 2005–8, 2005–9, 2005–10, 2005–11. Some matters are beyond dispute. Hours of

---

adult drive-in theater, adult live entertainment arcade or adult service establishment." Appellants' App. p. 143.

**4.** Indiana Code section 35–45–4–1 provides that a person who knowingly or intentionally, in a public place, "appears in a state of nudity with the intent to arouse the sexual desires of *the person or another person* ... *commits* public indecency, a Class A misdemeanor." Ordinance 2005–11 defines nudity or the state of nudity as "the showing of the human male or female genitals, pubic area, vulva, anus, anal cleft or cleavage with less than a fully opaque covering or the showing of the female

breast with less than a fully opaque covering of any part of the nipple." Appellants' App. p. 154.

**5.** The County also filed a motion to show cause on November 1, 2006, alleging that Plaza was in contempt of court for operating a sexually oriented business in violation of the parties' agreed preliminary injunction order and the County's sexually oriented business regulations. The trial court held a hearing and found Plaza to be in contempt of court, fining Plaza $30,000 and awarding the County attorney fees.

operation restrictions for adult businesses, many of which are more restrictive than those in question, have been upheld as constitutional in numerous federal appellate decisions. Similarly, federal appellate courts have upheld interior configuration operational requirements as a valid means of preventing illegal sexual behavior in adult business. And stripper-patron buffers have passed constitutional muster.

The ordinances contain procedural safeguards. That is, the licensing requirements provide for a relatively quick decision and allow for prompt judicial review of that decision. The county ordinances allow for alternative sites. And there has been no real argument that the ordinances are in any way vague, overbroad or violative of anyone's equal protection rights.

In passing the ordinances cited above, the County relied on numerous studies, reports and appellate cases. The defendants argued that these reports must be significantly tailored to the locality in question. The Court rejects this argument.

In adopting regulations, the [United States] Supreme Court in [*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)] said that the County may rely upon evidence "reasonably believed to be relevant" to the secondary effects of sexually oriented businesses. The County's reliance satisfied this requirement.

Finally, the defendants rely on the *New Albany II* case for the proposition that the County ordinances are not narrowly tailored as to the location requirements. [*New Albany DVD, LLC v. City of New Albany*, 362 F.Supp.2d 1015, 1022 (S.D.Ind.2005).] That case was the decision of a [federal district] court.

This Court rejects the reasoning in that decision. The fact that there may be imagined less-restrictive alternatives does not negate the fact that the ordinances provide reasonable alternative avenues of communication. Adult businesses have not been denied a reasonable opportunity to open and operate. The regulations restricting operations within 1,000 feet of a residence are valid.

Based on the above, the Court concludes that the ordinances in question are constitutional.

The Court will next address the building ordinance/building permit issue. Spencer County Ordinance 2005–02 is a valid ordinance requiring owners of real property to apply for and obtain a building permit prior to the alteration or remodeling of any building or structure the cost of which exceeds $5,000. The Court is eliminating any costs for painting or carpeting or anything that might be considered redecorating. Even in doing so, the evidence is overwhelming through affidavits and photographs of the many alterations done to the main building that the reasonable cost of those alterations far exceeded $5,000. The affidavits of the [County] identify many and numerous alterations and the estimated cost therefore which were totally ignored by [Plaza's] affidavits.

The evidence before the Court can only lead to the conclusion that the defendant began extensive alterations and remodeling of the main building without first obtaining the required building permit. Any use of the main building was unlawful and thus the defendants have not lawfully used the main building as a sexually oriented business.

* * *

When the motel was first operated as a motel after [Plaza] acquired the prop-

erty is in question. There are competing affidavits on that question. The answer to that question could very well be dispositive of the issue. However, the evidence is not so clear on either side which would allow this Court to find that there are undisputed facts. Summary judgment is inappropriate with regard to the motel. A short evidentiary hearing will be necessary.

The Court finds that summary judgment is not appropriate with regard to fines. An evidentiary hearing will be necessary at which time the defendants may have the opportunity to give any evidence which might mitigate potential fines. It is the Court's preference that this matter be held in abeyance until any appellate activity in this cause is concluded.

IT IS THEREFORE ORDERED that the [County] received a summary judgment that the Spencer County ordinances in question are constitutional.

IT IS FURTHER ORDERED that the [County] receive a summary judgment that [Plaza has] violated the County building code and a summary judgment that [Plaza has] not established any lawful, non-conforming sexually oriented business at the main building.

\* \* \*

IT IS FURTHER ORDERED THAT the [County is] entitled to a summary judgment granting a permanent injunction against [Plaza] from operating a sexually oriented business at the main store or the [convenience store].

IT IS FURTHER ORDERED THAT either party may request an evidentiary hearing with regard to the operation of the motel.

IT IS FURTHER ORDERED that [Plaza's] Cross Motion for Summary Judgment be denied.

IT IS FINALLY ORDERED that there is no just reason for delay and the Court directs entry of judgment on all of the issues rule upon by this Court.

Appellants' App. p. 9–12.[6] Plaza now appeals.

## DISCUSSION AND DECISION

### I. Jurisdiction

Plaza appeals the trial court's order granting partial summary judgment in favor of the County. While the parties agreed to a preliminary injunction more than a year before the summary judgment hearing, the trial court's partial summary judgment order also permanently enjoined Plaza from operating a sexually oriented business in the property's main store or convenience store. Because the trial court specifically provided that there is no just reason for delay regarding the ruled-upon issues, our court has jurisdiction pursuant to Trial Rule 54(B).

### II. Summary Judgment

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled

---

**6.** The trial court entered an order on June 18, 2007, to "correct the widely reported misconceptions about its prior ruling." Appellees' App. p. 170. The trial court emphasized that it "did *not* order [Plaza to] cease all operations" but, instead, "grant[ed] a permanent injunction against [Plaza] from operating a sexually oriented business." *Id.* (emphasis in original). The trial court noted that Plaza was free to operate a "commercial establishment" on the property as long as it complied with the local ordinances. *Id.*

to judgment as a matter of law. *Tack's Steel Corp. v. ARC Constr. Co., Inc.*, 821 N.E.2d 883, 888 (Ind.Ct.App.2005). A factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Although there may be genuine disputes over certain facts, a fact is material when its existence facilitates the resolution of an issue in the case. *Id.*

When we review a trial court's entry of summary judgment, we are bound by the same standard that binds the trial court. *Id.* We may not look beyond the evidence that the parties specifically designated for the motion for summary judgment in the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). However, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity on appeal. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39.

Where, as here, the trial court enters specific findings of fact and conclusions of law, they do not bind us but merely aid our review by providing us with a statement of reasons for the trial court's actions. *Crawford County Cmty. Sch. Corp. v. Enlow*, 734 N.E.2d 685, 689 (Ind.Ct.App. 2000). A grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App. 2000).

### III. Lawful Nonconforming Use

#### A. Applicable Law

A nonconforming use of property is a use that lawfully existed prior to the enactment of a zoning ordinance and continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions. *Metro. Dev. Comm'n of Marion County v. Pinnacle Media, LLC*, 836 N.E.2d 422, 425 (Ind. 2005). Whether a business has a right to maintain a nonconforming use is an issue of state law. *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997). Our Supreme Court has summarized the doctrine as follows:

> The general rule is that a nonconforming use may not be terminated by a new zoning enactment. In these situations, it is often said that the landowner had a "vested right" in the use of the property before the use became nonconforming, and because the right was vested, the government cannot terminate it without implicating the Due Process or Takings Clauses of the Fifth Amendment of the federal constitution, applicable to the states through the Fourteenth Amendment.
>
> A relatively frequent subject of land use litigation is whether a developer can have a "vested interest" in a nonconforming use that is only intended—construction has not yet begun at the time of the new enactment—such that the government cannot terminate it.... [M]any courts, including ours, have been presented with cases where a developer encounters a zoning change after embarking on a project but before beginning construction.... As a general proposition, the courts have been willing to hold that the developer acquires a "vested right" such that a new ordinance does not apply retroactively if, but only if, the developer (1) relying in good faith,

(2) upon some act or omission of the government, (3) has made substantial changes or otherwise committed himself to his substantial disadvantage prior to a zoning change.

* * *

But where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, there can be no vested rights. The fact that ground had been purchased and plans had been made for the erection of the building before the adoption of the zoning ordinance prohibiting the kind of building contemplated, is held not to exempt the property from the operation of the zoning ordinance. Structures in the course of construction at the time of the enactment or the effective date of the zoning law are exempt from the restrictions of the ordinance.

*Pinnacle Media*, 836 N.E.2d at 425–26 (citations omitted).

### B. Cost of Renovations

█ It is undisputed that Plaza renovated the property after purchasing it. However, the parties disagree about the extent and cost of those renovations. Ordinance 2005–02 (the building permit ordinance), which was adopted on March 15, 2005, requires property owners in Spencer County to apply for and obtain a building permit before "[b]eginning any addition, alteration, remodeling or repair of any building or structure the cost of which exceeds $5,000." Appellants' App. p. 124. Because Plaza did not obtain a building permit, the County contends that if the renovations cost more than $5,000, Plaza was not engaged in a lawful use of the property when ordinance 2005–10 was enacted on November 28, 2005. Under that

scenario, the County argues that ordinance 2005–10 prohibits Plaza from operating a sexually oriented business on the property because it is located within 1,000 feet of a residence.

After evaluating the parties' arguments regarding the cost of Plaza's renovations, the trial court concluded that

[t]he Court is eliminating any costs for painting or carpeting or anything that might be considered redecorating. Even in doing so, the evidence is overwhelming through affidavits and photographs of the many alterations done to the main building that the reasonable cost of those alterations far exceeded $5,000. The affidavits of [the County] identify many and numerous alterations and the estimated cost[s,] which were totally ignored by [Plaza's] affidavits.

The evidence before the Court can only lead to the conclusion that [Plaza] began extensive alterations and remodeling of the main building without first obtaining the required building permit. Any use of the main building was unlawful and thus [Plaza has] not lawfully used the main building as a sexually oriented business.

*Id.* at 11. Based on this conclusion, the trial court entered summary judgment in favor of the County because Plaza "had not established any lawful, non-conforming sexually oriented business at the main building." *Id.* at 12.

Richard Allen, a Plaza representative, attested that he purchased fifty mirrors, two used brass decorative entrance doors, twenty-five slat boards, thirty-five fiberglass reinforced panels (FRP), thirty sheets of birch paneling, forty feet of brass pipe, miscellaneous pipe fittings, 5/8 firecore drywall, and ceiling tiles for $3,150. *Id.* at 361. John Cox, Plaza's attorney, prepared an expense report providing, in

part,[7] that Plaza spent an additional $850 for pegboard and roof repairs. Appellees' App. p. 112. Thus, Plaza admits that it spent $4,000 renovating the property.

Ralph Pund is a registered professional engineer who is "well familiar with the layout and structural features of [the property,] ... having been in that facility over four hundred times over the past twenty years." Appellants' App. p. 221. The County designated two of Pund's affidavits as evidence, the second of which lists items and materials that Pund determined were installed as part of the remodeling project "but were *not* listed in the affidavits of [Plaza's representatives]." Appellees' App. p. 64 (emphasis added). The list of omitted items totals $25,837 [8] and includes hollow wood doors, wood studs for furring and walls, oak paneling for the vestibule, a three-bowl bar sink, insulated embossed steel doors, wood baseboard and chair rail, a suspended acoustical ceiling, wood frames for mirrors, steel furring channels, wood stage framing, plastic laminate for bars and stage surfaces, fixed bar stools, fluorescent emergency lights, and electric wire and boxes. *Id.* at 64–65. Pund attached photographs of the renovated property to his first affidavit and the wood mirror frames, plastic bar and stage laminate, fixed bar stools, and fluorescent lights are pictured in the photographs. Appellants' App. p. 226–27. Thus, the photographic evidence confirms that, at the very least, Plaza omitted these items from its cost calculation—items that Pund valued at $10,490. Appellees' App. p. 64–65.

While we are mindful that we must construe the evidence in favor of Plaza during our review of the trial court's grant of summary judgment in favor of the County, the photographs confirm that Plaza omitted various items and materials used in its renovation to arrive at its $4,000 estimate. And we have previously held that we will not permit a party's contradictory, self-serving testimony to create a genuine issue of material fact for purposes of summary judgment. *Miller v. Martig*, 754 N.E.2d 41, 46 (Ind.Ct.App.2001). As the trial court found, "the evidence is overwhelming through affidavits and photographs of the many alterations done to the main building that the reasonable cost of those alterations far exceeded $5,000." Appellants' App. p. 11. Because Plaza admits that it made $4,000 of renovations and the photographs show substantial renovations not included in that amount, we find that there is not a genuine issue of material fact that Plaza's renovations exceeded $5,000.

### C. Plaza's Use of the Property

■ Because Plaza's renovations exceeded $5,000, it should have applied for a building permit pursuant to the County's building permit ordinance before renovating the property. Notwithstanding Plaza's violation of the building permit ordinance, Plaza argues that its use of the property is entitled to lawful nonconforming use status because the building permit ordinance is not a zoning ordinance. Phrased another way, Plaza argues that it was in compliance with the County's zoning ordinances when the sexually oriented business ordinances were enacted; thus, it is entitled to operate a sexually oriented business on the

7. Cox's list also includes an additional $7,125 in expenses for painting, carpeting, and mirrors. Because Allen's affidavit includes the cost of mirrors and the trial court disregarded the costs of paint and carpeting because it considered those expenses to be permissible redecorating, we will not include these amounts in our calculation.

8. We arrive at this amount after subtracting the costs of carpeting, painting, and "miscellaneous material" that Pund included in his calculation. Appellees' App. p. 65.

property. The burden of proving a nonconforming use rests upon the party asserting its existence. *Wesner v. Metro. Dev. Comm'n of Marion County,* 609 N.E.2d 1135, 1138 (Ind.Ct.App.1993).

The County draws our attention to section 21(d) of ordinance 2005–11, which provides that "[n]otwithstanding anything to the contrary in any Spencer County ordinances, a nonconforming sexually oriented business, lawfully existing *in all respects under law* prior to the effective date of this ordinance, may continue to operate...." Appellants' App. p. 168 (emphasis added). The ordinance does not distinguish between zoning ordinances and other ordinances—such as the building permit ordinance—and, instead, provides that the sexually oriented business must have lawfully existed "in all respects" prior to the enactment of ordinance 2005–11.

Furthermore, we have previously held that a landowner who failed to obtain a required building permit did not acquire lawful nonconforming use status when a subsequent zoning regulation was enacted. *Bird v. Delaware Muncie Metro. Plan Comm'n,* 416 N.E.2d 482, 488 (Ind.Ct.App. 1981).[9] Specifically, the landowner in *Bird* did not obtain a building permit before moving two structures onto his land, and the county later enacted a zoning regulation that rendered the structures unlawful. Because the structures were "not [ ] a preexisting legal use" since the landowner had not obtained a building permit, we held that the landowner did "not acquire lawful status as [a] legal nonconforming use[ ]." *Id.* at 488.

Plaza argues that *Bird* is distinguishable because the building permit ordinance in that case was contained in the county's zoning ordinances, unlike the building permit ordinance at issue herein. However, in *Wesner,* we held that an adult business failed to prove it was a lawful nonconforming use because, in part, it had illegally operated as a house of prostitution. 609 N.E.2d at 1138–39. We emphasized that "penal statutes are but one method of promoting the public welfare. Zoning ordinances are another." *Id.* at 1141. Based on the reasoning of *Bird* and *Wesner,* we hold that Plaza was not entitled to lawful nonconforming use status on the property because it was in violation of the building permit ordinance when the sexually oriented business ordinances were enacted. There is no evidence that the building permit ordinance was enacted or enforced for any reason other than general public safety and welfare. Thus, Plaza's argument fails and we hold that the trial court properly found as a matter of law that Plaza was not entitled to lawful nonconforming use status on the property.

## IV. Constitutionality of County Ordinances

Although Plaza was not entitled to lawful nonconforming use status on the property, we still must address the constitutionality of the County's sexually oriented business ordinances. In other words, if Plaza successfully challenges the constitutionality of the ordinances, it would no longer be restrained from operating a sexually oriented business on the property and the trial court's entry of summary judgment would be improper.

■ Plaza argues that ordinances 2005–10 and 2005–11 unconstitutionally burden speech that is protected by the First Amendment to the United States

---

**9.** While Plaza relies on our opinion in *Board of Zoning Appeals v. Leisz* to rebut *Bird,* the *Leisz* opinion was vacated when the Supreme Court granted transfer and reversed our decision. 686 N.E.2d 935 (Ind.Ct.App.1997), *rev'd on other grounds by Board of Zoning Appeals v. Leisz,* 702 N.E.2d 1026 (Ind.1998).

Constitution. When the constitutionality of a county ordinance is challenged, the enactment stands before us "clothed with a presumption of constitutionality until clearly overcome by a contrary showing." *Dvorak v. City of Bloomington,* 796 N.E.2d 236, 237–38 (Ind.2003). The party challenging the constitutionality bears the burden of proof and all doubts are resolved against that party. *Id.* at 238. However, we review de novo the question of whether a municipal ordinance violates the United State Constitution. *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 995 (7th Cir.2002).

## A. Legal Framework

The Seventh Circuit Court of Appeals has summarized the current state of the law pertaining to sexually oriented business regulations:

> In *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Supreme Court applied a three-step analysis in reviewing the First Amendment validity of a municipal zoning ordinance that regulated adult movie theaters. The *Renton* analysis instructs courts reviewing regulations of adult entertainment establishments to consider: (1) whether the regulation constitutes an invalid total ban or merely a time, place, and manner regulation, (2) whether the regulation is content-based or content-neutral, and accordingly, whether strict or intermediate scrutiny is to be applied, and (3) if content-neutral, whether the regulation is designed to serve a substantial government interest and allows for reasonable alternative channels of communication.

> In upholding a ban on multiple-use adult establishments, the plurality opinion in *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), adhered to the *Renton* framework. However, in his concurrence, Justice Kennedy joined the four dissenters, *id.* at 455–56, 122 S.Ct. 1728, in eschewing the content-neutral "fiction" of adult entertainment zoning ordinances. *Id.* at 448, 122 S.Ct. 1728 ("These ordinances are content based and we should call them so."). Generally, content based restrictions on speech are analyzed with the strictest scrutiny, but Justice Kennedy explained that content based zoning regulations can be exceptions to that rule. In so concluding, he agreed with the plurality that "the central holding of *Renton* is sound: A zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny." *Alameda Books,* 535 U.S. at 448, 122 S.Ct. 1728. Whatever the label, *Renton's* second step is best conceived as an inquiry into the purpose behind an ordinance rather than an evaluation of an ordinance's form. *See Alameda Books,* 535 U.S. at 440–41, 122 S.Ct. 1728 (plurality opinion) (explaining *Renton's* second step "requires courts to verify that the *predominant concerns motivating* the ordinance were with the secondary effects of adult [speech]") (emphasis added). As we noted in *Ben's Bar [v. Village of Somerset,* 316 F.3d 702, 721 n. 26 (7th Cir. 2003) ], "while the label has changed, the substance of *Renton's* second step remains the same."

Accordingly, only after confirming that a zoning ordinance's purpose is to combat the secondary effects of speech do we employ *Renton's* intermediate scrutiny test. Under this test, zoning regulations are constitutional "so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." *Renton,* 475 U.S. at 47, 106 S.Ct. 925. At this stage, courts are

"required to ask 'whether the municipality can demonstrate a connection between the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance.'" *Ben's Bar*, 316 F.3d at 724 (quoting *Alameda Books*, 535 U.S. at 441, 122 S.Ct. 1728). In other words, simply stating that an ordinance is designed to combat secondary effects is insufficient to survive intermediate scrutiny. The governmental interest of regulating secondary effects may only be upheld as substantial if a connection can be made between the negative effects and the regulated speech. In evaluating the sufficiency of this connection, courts must "examine evidence concerning regulated speech and secondary effects." *Alameda Books*, 535 U.S. at 441, 122 S.Ct. 1728. According to the *Alameda Books* plurality, the evidentiary requirement is met if the evidence upon which the municipality enacted the regulation "is reasonably believed to be relevant for demonstrating a connection between [secondary effects producing] speech and a substantial, independent government interest." 535 U.S. at 438, 122 S.Ct. 1728.

* * *

In sum, *Alameda's* plurality opinion along with Justice Kennedy's concurrence establish that in order to justify a content-based time, place, and manner restriction, a municipality must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, (i.e., is designed to serve or furthers a substantial or important government interest), while leaving the quantity and accessibility of speech substantially intact (i.e., the regulation is narrowly tailored and does not unreasonably limit alternative avenues of com-

munication). *Ben's Bar*, 316 F.3d at 725.

*R.V.S., L.L.C. v. City of Rockford,* 361 F.3d 402, 407–09 (7th Cir.2004) (various citations omitted) (emphasis in original).

### B. Substantial Government Interest

Plaza first argues that the County did not meet its burden of establishing that it enacted the sexually oriented business ordinances to further a substantial government interest. Specifically, Plaza attacks the evidence the County cited to support adopting the ordinances and argues that the evidence does not fairly support the County's purported rationale for the ordinances.

■ The United States Supreme Court has held that a municipality can rely on "any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Alameda Books*, 535 U.S. at 438, 122 S.Ct. 1728 (quoting *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925). However, the Supreme Court emphasized that

*[t]his is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance.* If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.* If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Alameda Books,* 535 U.S. at 438–439, 122 S.Ct. 1728 (emphasis added). Furthermore, the First Amendment "does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to the relevant to the problem that the city addresses." *Andy's Rest. & Lounge, Inc. v. City of Gary,* 466 F.3d 550, 555 (7th Cir.2006) (citing *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925). And the Supreme Court has "consistently held that a city must have latitude to experiment, at least at the outset, and that very little evidence is required." *Alameda Books,* 535 U.S. at 451, 122 S.Ct. 1728 (Kennedy, J., concurring).

■■■ Section 1(a) of ordinance 2005–11 provides that the purpose of the ordinance is "to promote the health, safety, moral, and general welfare of the citizens of the County." Appellants' App. p. 149. As support, section 1(b) cites twenty-six court decisions and twenty case studies concerning the adverse secondary effects that occur in and around sexually oriented businesses. *Id.* at 150. Based on these cases and studies, the County Board of Commissioners found that

(1) Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effect including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency. . . .

(2) Sexually oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such uses, and should be separated from other sexually oriented business, to minimize the secondary effects associated with such uses and prevent an unnecessary concentration of sexually oriented businesses in one area.

(3) Each of the foregoing negative secondary effects constitutes a harm which the County has a substantial government interest in preventing and/or abating. This substantial government interest in preventing secondary effects, which is the County's rationale for this ordinance, exists independent of any comparative analysis between sexually oriented and non-sexually oriented businesses. Additionally, the County's interest in regulating sexually oriented businesses extends to preventing future secondary effects of either current or future sexually oriented businesses that may locate in the County. The County finds that the cases and documentation relied on in this ordinance are reasonably believed to be relevant to said secondary effects.

Appellants' App. p. 151.

Plaza argues that "the studies supposedly relied upon by the County all analyzed the effects of such businesses in residential communities and near other businesses, and which were located in large metropolitan areas." Appellants' Br. p. 22. Plaza contends that the rural location of its property distinguishes it from the cited reports. As Plaza's attorney argued at the summary judgment hearing,

If you go out there and you take a look, there's nothing there. It's off the highway. There's a single residence. Nobody has ever put forth any evidence anywhere in any of the material that that particular person was complaining about it. To say that it would have secondary effects, an increase in crime, it would be a blight, it would deplete the property values and all that, that's all farmland around there. *There's nothing there at all for any of these studies.*

Tr. p. 37 (emphasis added).

When challenging the constitutionality of sexually oriented business ordinances,

litigants have relied on the rural/urban evidence distinction with varied success. In *LLEH, Inc. v. Wichita County,* the Fifth Circuit Court of Appeals reversed a trial court's holding that a local ordinance was unconstitutional because the county only relied on studies addressing the secondary effects of adult businesses in urban areas. 289 F.3d 358, 366–67 (5th Cir. 2002). Although Wichita County was located in an unincorporated, rural area with few residential dwellings, the *LLEH* court held that

> [t]he secondary effects that urban areas have experienced (well documented in the relied-upon studies) are precisely what the County is attempting to avoid.... By [enacting the regulations], the County may, in its continued growth and development, successfully sidestep many of the problems encountered by urban areas. In this respect, the relied-upon studies are "reasonably believed to be relevant" to the problems the County seeks to address.

*Id.* at 367 (emphases omitted).

Recently, in *Abilene Retail No. 30 v. Board of Commissioners of Dickinson County,* the Tenth Circuit Court of Appeals reversed a district court's decision granting summary judgment in favor of a county based on the rural county's reliance on studies from urban areas. 492 F.3d 1164, 1175–76 (10th Cir.2007). The *Abilene Retail* court held that

> [a]ll of the studies relied upon by the Board examine the secondary effects of sexually oriented businesses located in urban environments; none examine businesses situated in an entirely rural area. To hold that legislators may reasonably rely on those studies to regulate a single adult bookstore, located on a highway pullout far from any business or residential area within the County, would be to abdicate our independent

judgment entirely. Such a holding would require complete deference to a local government's reliance on prepackaged secondary effects studies from other jurisdictions to regulate any single sexually oriented business, of any type, located in any setting. Our review is deferential, but the evidentiary basis for the [ordinance] must establish some minimal connection to the secondary effects attendant to Dickinson County's existing sexually oriented business(es). Based on the record before us, we conclude that a material dispute of fact exists as to whether the Board has established such a connection.

*Id.* at 1175–76 (footnotes omitted).

Although not addressing the urban/rural evidence distinction, the Seventh Circuit Court of Appeals has provided insight into the amount of evidence a city must cite to support its substantial government interest. In *R.V.S.,* the Seventh Circuit Court of Appeals noted that the City of Rockford "does not identify *any* studies, judicial opinions, or experience-based testimony that it considered in adopting the Ordinance." 361 F.3d at 411 (emphasis added). In fact, the court noted that Rockford

> produced little evidence of harmful secondary effects connected to Exotic Dancing Nightclubs beyond the assumption that such effects exist. While it is true that common experience may be relied upon to bolster a claim that a regulation serves a current governmental interest, the experience in this case falls short of satisfying the minimal evidentiary showing of *Alameda Books.* Indeed, while courts may credit a municipality's experience, such consideration cannot amount to an acceptance of an "if they say so" standard.

*Id.* While the *R.V.S.* court acknowledged that "courts should not be in the business of second-guessing-fact-bound empirical

assessments of city planners," it concluded that Rockford had not satisfied the *Alameda Books* requirement that municipalities rely upon evidence reasonably believed to be relevant when enacting sexually oriented business ordinances. *Id.* at 412.

While Plaza urges us to follow the *Abilene Retail* court's rationale, as the *R.V.S.* court cautioned, we should not be in the business of second-guessing the empirical assessment of municipalities enacting sexually oriented business ordinances. Instead, if the municipality's evidence fairly supports the municipality's rationale for its ordinance and the adult business fails to cast direct doubt on that rationale, the municipality has met the standard set forth in *Renton*. *Alameda Books*, 535 U.S. at 438–39, 122 S.Ct. 1728.

As the County notes in its brief, Plaza "has not furnished any evidence to dispute the County's factual findings about the secondary effects, and [Plaza] has not demonstrated in any way that the legislative record does not support the County's rationale." Appellees' Br. p. 32. Instead of citing probative evidence supporting its argument that the County's record is insufficient, Plaza merely directs us to the conclusory statement made at the summary judgment hearing that "there's nothing there" around the property and "[t]here's nothing there at all for any of these studies." Tr. p. 37. However, if we allow Plaza's bare assertion that the County's evidence is not reasonably believed to be relevant because of geographical distinctions between Spencer County and the cited evidence, we would, in effect, be adopting an "if they say so" standard for adult businesses making this kind of challenge. This could not have been what the Supreme Court intended when it provided that plaintiffs must cast *"direct doubt"* on the municipality's purported rationale "either by *demonstrating* that the municipali-

ty's evidence does not support its rationale or by *furnishing evidence* that disputes the municipality's factual findings" in order to trigger the burden to "shift[ ] back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Alameda Books*, 535 U.S. at 438–39, 122 S.Ct. 1728 (emphases added).

Based on this reasoning, we find that Plaza has failed to cast direct doubt on the County's rationale and, therefore, the burden does not shift to the County to supplement the record with evidence renewing support for its substantial government interest. Because the evidence the County relied upon is reasonably believed to be relevant to the secondary effects it sought to address with the sexually oriented business ordinances, Plaza's challenge fails on these grounds.

### C. Breadth of Ordinances

Plaza next argues that the County was not entitled to summary judgment because the sexually oriented business zoning ordinances are not narrowly tailored. Specifically, Plaza argues that the trial court erroneously rejected the Southern District of Indiana's reasoning in *New Albany DVD, LLC v. City of New Albany*, 362 F.Supp.2d 1015, 1022 (S.D.Ind.2005) (*New Albany II*), appeal pending, and upheld the constitutionality of the ordinance banning sexually oriented businesses from operating within 1,000 feet of a residence "without any real analysis." Appellants' Br. p. 24.

A time, place, and manner restriction that indirectly affects speech must be narrowly tailored and leave ample alternative channels for communication. *Ben's Bar*, 316 F.3d at 725. "[T]he First Amendment requires only that [municipalities] refrain from effectively denying [sexually oriented businesses] a reasonable opportunity to open and operate ... within

the city." *Renton,* 475 U.S. at 54, 106 S.Ct. 925. The requirement of narrow tailoring is satisfied

> so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.... So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. The validity of time, place, or manner regulations does not turn on a judge's agreement with the responsible decision-maker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted.

*Ward v. Rock Against Racism,* 491 U.S. 781, 799–800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see also Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 1002 (7th Cir.2002) (holding that narrow tailoring does not require the restrictions to be the least restrictive means of serving the municipality's content-neutral interests).

Before addressing *New Albany II,* we note that County Administrator Cail attested that she has

> identified at least 34 sites in the B1, B2, I1, and I2 zoning districts which are more than 1,000 feet from any parcel occupied by a sexually oriented business or by a business licensed [ ] to sell alcohol at the premises, and which are more than 1,000 feet from any parcel occupied by any church, public or private elementary or secondary school, daycare center or preschool, public park, or any residence.

Appellees' App. p. 96. Therefore, while Plaza's current location violates the Coun-

ty's ordinances because it is within 1,000 feet of a residence, there are at least thirty-four other sites in Spencer County where Plaza could lawfully operate a sexually oriented business. Plaza does not challenge this evidence.

Plaza argues that the trial court erroneously rejected the reasoning in *New Albany II.* In that decision, the Southern District of Indiana held that "[t]he 'narrowly tailored' test is an effort to ensure that, given a genuine nexus between the purpose of an Ordinance that regulates First Amendment speech and the Ordinance itself, the law not be broader than necessary to achieve the City's goal." 362 F.Supp.2d at 1022. Plaza directs us to the court's holding that

> ostensibly to prevent criminal activity in neighborhoods, the Ordinance broadly restricts adult businesses from locating near dwellings, but not specifically *occupied* dwellings, which would clearly be a more narrowly tailored restriction. Further, rather than impose a wholesale ban on adult bookstores located near houses of worship, the Ordinance would better satisfy the "narrowly tailored" requirement if it were to restrict the bookstores' hours of operation to exclude Sundays or such other times when the nearby religious establishments are frequented by worshipers.

> We reference these more narrowly tailored restrictions for the reason that if the city is concerned with limiting criminal activity as an adverse secondary effect of adult businesses, and chooses to deal with the problem through zoning restrictions, then it must draw those regulations sufficiently narrowly to address the feared harm but without burdening unduly the protected activity. As it currently stands, these restrictions apply to the only existing adult bookstore in New Albany, which obviously

means that the constitutionally protected speech will be substantially burdened since there are no alternative channels for the sale and rental of adult materials by an avowedly adult entertainment business.

*Id.* at 1022–23 (emphasis in original).

Plaza analogizes the facts at issue herein to the statutes construed in *New Albany II*. Specifically, Plaza notes that it is the only sexually oriented business seeking to operate in Spencer County and that the County's sexually oriented business ordinances also do not limit the 1,000–foot restriction to occupied dwellings. Therefore, Plaza argues that we should follow the *New Albany II* court's reasoning and deem the challenged statutes unconstitutional.

■ As a preliminary matter, we note that while federal district court decisions may be persuasive, they are not binding authority on state courts. *Reuille v. E.E. Brandenberger Constr., Inc.*, 873 N.E.2d 116, 120 n. 1 (Ind.Ct.App.2007).[10] Therefore, the trial court was not bound to apply the *New Albany II* holding to the facts of this case. Furthermore, the *New Albany II* court was addressing an adult business's motion for preliminary injunction; therefore, the district court was evaluating the *likelihood* that the plaintiff's constitutional claim would succeed on the merits. The court did not actually determine the constitutionality of the challenged ordinances.

Turning to the merits of the *New Albany II* decision, the district court based its holding on alternative ordinance constructions that it found "would clearly be [ ] more narrowly tailored." 362 F.Supp.2d at 1022. While it will almost always be possible to imagine a more narrowly tai-

lored ordinance when assessing a constitutional challenge, the Supreme Court has held that such an analysis is not appropriate. Instead, as noted above, the Supreme Court has provided that "the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward,* 491 U.S. at 800, 109 S.Ct. 2746. So long as the means chosen "are *not substantially broader* than necessary to achieve the government's interest," the regulation is valid. *Id.* (emphasis added). As the Seventh Circuit Court of Appeals noted, "*Ward* thus expressly rejected the argument that the government must choose the 'least restrictive means' or the 'least restrictive alternative' in order to meet the definition of narrowly tailored." *Matney v. County of Kenosha,* 86 F.3d 692, 696 (7th Cir.1996).

The Supreme Court's holding in *Ward* compels us to shift our focus away from whether a less restrictive ordinance can be construed and, instead, concentrate on whether or not the chosen means are substantially broader than necessary to achieve the government's interest. Therefore, we cannot conclude that it was error for the trial court to reject the reasoning of the *New Albany II* court.

■ Plaza specifically attacks the 1,000–foot restriction contained in the County's ordinances because Plaza is prohibited from operating a sexually oriented business on the property, as it is located within 1,000 feet of a residence. However, similar restrictions have been deemed constitutional. *See, e.g., Renton,* 475 U.S. at 52–56, 106 S.Ct. 925 (upholding the constitutionality of city's zoning ordinance prohibiting adult motion picture theaters from locating within 1,000 feet of any residential

---

**10.** In fact, the only federal court decisions that bind state courts are those of the United States Supreme Court. *Doe v. Pryor,* 344 F.3d 1282, 1286 (11th Cir.2003).

zone, church, park, or school); *Ill. One News, Inc. v. City of Marshall,* 477 F.3d 461, 464 (7th Cir.2007) (upholding the constitutionality of a small city's 1,000–foot–restriction, which limited adult businesses to approximately four percent of the city's land).

Furthermore, Plaza has repeatedly emphasized the rural nature of Spencer County. Because of its rural setting, two buildings in Spencer County that are located within 1,000 feet of each other would be considered to be in extremely close proximity to one another. Moreover, as noted above, there are at least thirty-four alternative sites in Spencer County on which Plaza could operate a sexually oriented business and comply with the 1,000–foot restriction. Appellees' App. p. 96. Therefore, in light of the number of alternative avenues of communication available to Plaza in Spencer County, we find the ordinances' 1,000–foot restriction to be constitutional.

### D. Conclusion

In sum, the County's sexually oriented business ordinances are designed to serve a substantial governmental interest while allowing for reasonable alternative avenues of communication. Plaza has failed to cast direct doubt on the County's rationale for the ordinances, and the evidence relied upon by the County is reasonably believed to be relevant to the secondary effects the County seeks to address. The evidence shows that there are at least thirty-four alternative sites in the Spencer County on which Plaza could operate a sexually oriented business and comply with the 1,000–foot restriction. Therefore, because the ordinances are designed to serve a sub-

stantial government interest while allowing for reasonable alternative avenues of communication, the dictates of the First Amendment are satisfied and Plaza's challenge fails.[11] Consequently, the trial court properly granted summary judgment in favor of the County.

### V. Permanent Injunction

Although the appellants' case summary lists the trial court's permanent injunction as an "anticipated issue on appeal," neither party specifically addresses that issue. However, the gravamen of Plaza's argument is that it should be allowed to operate a sexually oriented business on the property. Thus, contained within its argument is the presumption that the trial court erred by granting the County injunctive relief. Therefore, we will briefly address the propriety of the trial court's entry of injunctive relief.

The granting or denying of an injunction is within the discretion of the trial court, and our review is limited to the determination of whether or not the trial court clearly abused that discretion. *Stuller v. Daniels,* 869 N.E.2d 1199, 1208 (Ind. Ct.App.2007). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or if it misinterprets the law. *Id.* The difference between a preliminary and permanent injunction is procedural: a preliminary injunction is issued while an action in pending, whereas a permanent injunction is issued upon a final determination. *City of Gary v. Enter. Trucking & Waste Hauling,* 846 N.E.2d 234, 242 (Ind. Ct.App.2006).

---

11. County ordinances 2005–10 and –11 are lengthy regulations comprising twenty-six pages of the record. Appellants' App. p. 143–69. We emphasize that we have only analyzed the portions of the ordinances that Plaza has specifically challenged and our holding regarding the ordinances' constitutionality does not apply to the portions of the ordinances not specifically addressed herein.

Generally, the trial court considers four factors when determining whether to grant injunctive relief:

(1) whether plaintiff's remedies at law are inadequate; (2) whether the plaintiff can demonstrate a reasonable likelihood of success on the merits; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief.

*Ferrell v. Dunescape Beach Club Condos.,* 751 N.E.2d 702, 712 (Ind.Ct.App.2001). The party seeking the injunction carries the burden of demonstrating an irreparable injury; however, when the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardships in his favor. *Id.* Permanent injunctions are limited to prohibiting injurious interference with rights and must be narrowly tailored so that its scope is not more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted. *Id.*

In seeking an injunction for a zoning violation, the moving party must prove the existence of a valid ordinance and a violation of that ordinance. *Saurer v. Bd. of Zoning Appeals,* 629 N.E.2d 893, 896 (Ind.Ct.App.1994). We have already upheld the constitutionality of the challenged portions of the County's sexually oriented business ordinances. And Plaza violates the ordinances by operating a sexually oriented business on the property in violation of the 1,000–foot restriction. Thus, the County has proven the existence of a valid zoning ordinance and Plaza's violation thereof. We conclude that this evidence is sufficient to sustain the injunction on appeal, given our discretionary review of the trial court's entry of injunctive relief. *See Dierckman v. Area Planning Comm'n of Franklin County,* 752 N.E.2d 99, 104–05 (Ind.Ct.App.2001) (holding that the trial court's issuance of an injunction was not an abuse of discretion because the defendants violated a zoning ordinance).

As previously noted, the trial court issued an order on June 18, 2007, emphasizing that while the permanent injunction enjoins Plaza from unlawfully operating a sexually oriented business on the property, Plaza is free to operate a commercial establishment that complies with the County's ordinances. We find the injunction to be narrowly tailored and conclude that the trial court's entry of injunctive relief in favor of the County was not an abuse of discretion.

The judgment of the trial court is affirmed.

MAY, J., and CRONE, J., concur.