**NEW ALBANY DVD, LLC, Plaintiff,**

v.

**CITY OF NEW ALBANY, Indiana, Defendant.**

No. 4:04–CV–00052–SEB–WG.

United States District Court, S.D. Indiana, New Albany Division.

Jan. 3, 2005.

---

Bart M. Betteau, Betteau Law Office, LLC, New Albany, IN, Steven Gerald Mason, Orlando, FL, for Plaintiff.

Scott D. Bergthold, Law Office of Scott D. Bergthold PLLC, Chattanooga, TN, Shane L. Gibson, Gibson Law Office, New Albany, IN, for Defendant.

### *ENTRY GRANTING PLAINTIFF'S SECOND MOTION FOR PRE-LIMINARY INJUNCTION*

BARKER, District Judge.

This matter comes before the Court on Plaintiff's Second Motion for Preliminary Injunction of Defendant's adult entertainment code, Ordinance G–04–10. Two evidentiary hearings on the issues of the constitutionality of the code and the applicability of the amortization provision of the ordinance to Plaintiff precede this order. On May 5, 2004, we primarily heard testimony on the factual and legal predicate for Defendant's closure of Plaintiff's business. It was agreed that the parties would complete any outstanding administrative procedures and report to the Court by May 30, 2004. On November 9, 2004, we heard expert testimony on the First Amendment issue of whether the Defendant's adult entertainment ordinance is a lawful "time, place and manner" restriction. For the reasons given

below, we *GRANT* Plaintiff's motion and enjoin enforcement of the ordinance until the Court's resolution of the substantive merits of the case.

## Factual Background

The facts appear elsewhere in greater detail; see this court's entries from July 22, 2004, granting the City's Motion to Remand,[1] and July 22, 2004, denying the City's Motion to Dismiss.[2] Nevertheless, we include a summary of those facts relevant to the issues before us in this motion.

Defendant, City of New Albany ("City"), enacted an adult entertainment ordinance in March 2004. Plaintiff, New Albany, DVD ("DVD"), is a retail business located at 601 West Main Street in New Albany which, despite its intent to sell and rent sexually explicit materials for take-home use only, is not currently in operation. It is DVD's inability to operate at that location that has given rise to this litigation.

## I. Background Facts

Plaintiff purchased the West Main Street property in 2003. The property was, at the time of purchase, zoned for commercial uses.[3] Plaintiff remodeled the building[4], and upon completion, scheduled the final inspection required for the issuance of a Certificate of Occupancy ("CO"). The morning of the final inspection, February 19, 2004, Plaintiff was told by a city official that the inspection had been cancelled for DVD's failure to comply with certain building and zoning provisions.[5] Later that evening, February 19, 2004, the New Albany City Council met and adopted a six-month moratorium on the authorization of any licensing of a sexually oriented business.[6] The moratorium was supplanted a month later, on March 18, 2004, by the enactment of Ordinance G–04–10 ("the Ordinance"), the scope of which is the regulation of sexually oriented businesses. *See infra.*

On the morning of February 19, 2004, Plaintiff was prevented from operating its business for failing to complete city building and zoning requirements. The next day, Plaintiff faced a second obstacle to opening for business when its intended commercial use was banned by the moratorium. Within a month, a third obstacle to its operating an adult book and video store at 601 West Main Street was created by the enactment of the new Ordinance which prohibited operation of a sexually-oriented business within 1,000 feet of a church,

1. Cause No. 4:04–CV–0086–SEB–WGH, *City of New Albany v. NA DVD, LLC.*

2. Cause No. 4:04–CV–0052–SEB–WGH, *NA DVD, LLC v. City of New Albany.*

3. See Pl.'s Response to Def.' Reply, Dkt. # 21, Ex. 7 (Zoning Verification Form, March 22, 2004, states that 601 West Main St. is zoned C–2; General Business).

4. Plaintiff received a permit from the Building Commission to remodel a "retail business in a commercial zone."

5. The final inspection was cancelled by Building Commissioner, Eddie Hancock, for DVD's failure to obtain an improvement location permit ("ILP") from, and submit a site plan and parking plan to, the Planning and Zoning Office, as required by § 156.41 of the New Albany Code. An ILP and CO must be applied for from the City Zoning Officer under § 156.41 when a person or business "seeks to erect, construct, reconstruct, extend, structurally alter or move a structure when land or a building or structure is changed in use." The application must be accompanied by a plot plan or detailed site development plan. Dkt. # 19; Rosenbarger Aff. ¶¶ 4–5.

6. Resolution No. R–04–10 reads, in pertinent part:

    "The City Council hereby institutes a moratorium to temporarily prohibit such business from opening or locating in the City of New Albany. This moratorium will take affect [sic] immediately upon passage . . . . . "

since DVD's premises are located within 1,000 feet of the Main Street United Methodist Church at 516 West Main Street.

Undaunted by the mounting and shifting obstacles, DVD applied for the ILP at the conclusion of the May 5th hearing, which application was rejected by the City on May 14, 2004, for the following stated reasons: (1) the zoning restrictions contained in the Ordinance prohibited an adult business from operating in that location[7]; and (2) even if the proposed use were permitted, there were miscellaneous safety issues relating to parking spaces and the location of the pole sign. Status Report, Docket # 61, Exhibit, Letter dated May 14, 2004. DVD subsequently submitted an amended application for an ILP, which, again, also was rejected, this time solely for the reason that the recently enacted Ordinance forbids the plaintiff's proposed use. The City acknowledged that the miscellaneous other problems had been satisfactorily resolved. Docket # 77, Exhibit, Letter dated July 19, 2004, page 2.

## II. *The Ordinance*

The Ordinance targets sexually oriented businesses as a category of commercial uses associated with a "wide variety of adverse secondary effects including . . . personal and property crimes, illicit and unsanitary sexual activity, illicit drug use, decreased desirability of and negative impacts on the use of surrounding properties, blight, litter, and sexual assault and exploitation." Ordinance Sec. 1(B). One type of "sexually oriented business" defined by the Ordinance is the "Adult Video Store" or "Adult Bookstore" which dedicates thirty percent (30%) or more of its stock-in-trade to books, magazines, films and video cas-

settes which depict "specified sexual activities" or "specified anatomical areas." Ordinance Sec. 2(H)(1). Plaintiff meets this definition of a sexually oriented business and, thus, is subject to provisions regulating location, permits, inspections, hours or operation and configuration of the premises.

The most immediate obstacle to Plaintiff's lawful operation is its location. Section 3(A) of the Ordinance, also Section 156.079(m)(b)(2) of the City Zoning Code,[8] makes it a violation to establish, operate, or cause to be operated an adult bookstore: (1) within 1,000 feet of a house of worship; (2) within 1,000 feet of a residential district; and (3) within 500 feet of any dwelling. As noted above, DVD's premises are located 175 feet from the Main Street United Methodist Church. Additionally, in rejecting DVD's ILP, the City[9] cited DVD's proximity to a residential district ("[a]n R–4, Multi–Family, high density district is located 115 feet to the north of the proposed site") and to an adjacent dwelling.

Although with respect to its motion for preliminary injunction, DVD asks the Court to consider the overall constitutionality of the Ordinance, DVD might still be able to operate despite the zoning restrictions, apart from its constitutionality, if the amortization provision in the Ordinance were found to apply to DVD. The amortization provision reads, in pertinent part:

> A pre-existing "Sexually Oriented Business," lawfully existing in all respects prior to the effective date of this ordinance, may continue to operate for two (2) years following that date in order to

---

7. Dkt. # 61, Status Report, Appendix Tab B . .

8. *See,* also Ordinance Z–04–20, amending the Sexually Oriented Business Ordinance, and passed on May 5, 2004. See Docket # 014, Part 2, Ex. 2.

9. *See* July 19, 2004, letter from Zoning Officer John Rosenbarger, Dkt. # 77.

make a reasonable recoupment of its investment in its current location.

Ordinance, Section 4(A).

In other words, under this section, if DVD were a lawfully existing sexually oriented business in February 2004, it would be considered a nonconforming use under the subsequently enacted Ordinance, which would permit Plaintiff to operate at its current location for two (2) years in order to recoup its losses. We address each of these issues below.

## Legal Analysis

### I. Preliminary Injunction Standard.

■ A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved. *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir.2001). To obtain the injunction, a plaintiff must show: (1) a reasonable likelihood of success on the merits; (2) that it has no adequate remedy at law; (3) that it will suffer irreparable harm if an injunction does not issue; (4) that the threatened injury it faces outweighs the injury defendant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. Although these elements are theoretically distinct, in the First Amendment context they essentially reduce to the question of whether plaintiff is likely to succeed on the merits. *Tanford v. Brand*, 883 F.Supp. 1231, 1237 (S.D.Ind.1995) (Barker, C.J.).

### II. Likelihood of Success on the Merits.

### A. The Constitutionality of the Ordinance.

■ The City is constitutionally permitted to impose requirements on adult bookstores, which would otherwise act as a prior restraint on protected speech, only if they are proper time, place or manner restrictions narrowly tailored to serve a significant governmental interest unrelated to the suppression of free expression and leave open alternative channels of communication. *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988 (7th Cir.2002). DVD contends that the Ordinance fails to meet the standard for a constitutional time, place, and manner restriction on protected speech as set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) and *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). The Seventh Circuit has recently summarized the current standard on adult entertainment regulations thus:

> "The [Supreme] Court currently evaluates adult entertainment zoning ordinances as time, place, and manner regulations." A time, place, and manner regulation of adult entertainment will be upheld if it is "designed to serve a substantial government interest and ... reasonable alternative avenues of communication remain[ ] available." Additionally, a time, place, and manner regulation must be justified without reference to the content of the regulated speech and narrowly tailored to serve the government's interest.

*Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 713 –714 (7th Cir.2003) (alterations in original) (internal citations omitted).

### 1. Substantial Government Interest

The City advances the following "straightforward rationale" for the Ordinance:

> "sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, illicit and unsanitary sexual activity, illicit drug use, decreased desirability of and negative impacts on the use of surrounding properties, blight, litter, and sexual as-

sault and exploitation. The City has a substantial government interest in preventing each of the aforementioned adverse effects."

Ordinance No. G–04–10, Section 1(B). Def.'s Mot. in Limine at 3; Docket # 99.

The *Renton* standard (modified by *Alameda Books*) allows a municipality to rely on evidence it "reasonably believed to be relevant" to the problem it addresses, even if the evidence is neither local nor recent. *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925; *Alameda Books*, 535 U.S. at 438, 122 S.Ct. 1728 (plurality opinion); *id.* at 451, 122 S.Ct. 1728 (Kennedy, J., concurring) ("we have consistently held that a city must have latitude to experiment, at least at the outset, and that very little evidence is required") (*citations omitted*). The City maintains it has satisfied the standard by considering a wide range of sources—land use studies and crime impact reports, previous judicial opinions and non-local anecdotal reports of adverse impacts [10]—when it enacted the Ordinance.

Plaintiff does not dispute the quantum of evidence relied upon by the City; the standard is, admittedly, a minimal evidentiary standard.[11] Instead, the quarrel is with the type or nature of the evidence. Plaintiff argues that the data the City imported into the legislative record should be specific to the sub-category of adult entertainment business it seeks to regulate; the "retail-only" adult bookstore, of which DVD is a prime example. In the adult entertainment sector, the term "adult bookstore" is sometimes used in a generic sense and does not distinguish between retail stores which exclusively sell "take-home" materials (such as DVD) and those which also feature viewing booths for "on-site" consumption of sexually explicit materials.[12]

The parties offered expert testimony at the November hearing on this issue. Plaintiff's expert, Dr. Linz, testified that no study has ever been conducted establishing and linking retail-only establishments to adverse secondary effects, perhaps for the reason that this type of store, i.e., strictly retail sales, is a relatively new commercial venture and post-dates the majority of the studies which cities around the country have relied upon for evidence of adverse secondary effects. Hearing Transcript at 19, 28. In addition, DVD offered its own evidence that other businesses in New Albany which sell adult materials, but are not regulated by the Ordinance, actually experienced less crime than similar businesses which do not sell adult materials.[13] This proffer was intend-

10. Exhibits of pornographic litter relied upon in *World Wide Video of Washington, Inc. v. City of Spokane*, 227 F.Supp.2d 1143 (E.D.Wash.2002), *aff'd* 368 F.3d 1186 (9th Cir.2004).

11. Indeed, it seems that only a legislative record thoroughly devoid of studies, judicial opinions, or experience-based testimony is considered to be sub-standard. *See, e.g. R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 411 (7th Cir.2004) (holding that a critical deficiency of the regulation was the lack of evidence connecting the regulated business and the harm that allegedly motivated the regulation).

12. Although the distinction between sexually oriented businesses which offer on-site enter-

tainment versus those which only offer off-site entertainment is immaterial to our ruling on this motion, we note that the distinction was found relevant in *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir.2003), cert. denied, 540 U.S. 982, 124 S.Ct. 466, 157 L.Ed.2d 372 (2003) but irrelevant in *Z.J. Gifts D–2, L.L.C. v. City of Aurora*, 136 F.3d 683 (10th Cir.1998), cert. denied, 525 U.S. 868, 119 S.Ct. 162, 142 L.Ed.2d 133 (1998) (holding the distinction "constitutionally irrelevant"). *See also, Dr. John's, Inc. v. City of Roy, Utah*, 333 F.Supp.2d 1168 (D.Utah 2004).

13. Plaintiff compared police "calls for service" to two video stores which carry adult materials, Movie Gallery and J & J Video,

ed to challenge the City's rationale that sexually oriented business are more readily associated with criminal activity than other types of business. As for the problem of pornographic litter that may be associated with adult entertainment businesses, DVD correctly states that the City has offered no testimony or local empirical data to support the proposition, aside from importing anecdotal evidence found in the legislative record of Spokane, Washington as support for its rationale.[14]

In contrast, Defendant's expert, Dr. McCleary, stated that the generic body of data imported into the Ordinance is an adequate factual predicate for the law because it demonstrates that sexually oriented businesses, as a class that includes retail-only adult bookstores, generate significant ambient public safety hazards. Def.'s Opp'n Br., Docket # 89, McCleary Second Report, p. 2. Although Dr. McCleary conceded that he knows of no research that shows different effects for various sub-classes of businesses, he explained that the criminological research reveals that crime is generated by the general commercial activity associated with an adult business, and not the sexually explicit nature of the inventory. Hearing Transcript at 94. That is, "predatory criminals" are attracted to the patrons of adult entertainment businesses, who represent "soft targets" for criminal activity because they are typically persons from out of town, who carry sizeable

amounts of cash and, if victimized, fail to report it to the police. *Id.* at 100.

■ The City has established through this evidence the first prong of the *Renton* test for the following reasons. First, the Ordinance states that its purpose is to prevent a wide variety of harms that sociological and criminological studies tend to demonstrate are associated with sexually oriented businesses. One such harm is criminal activity in neighborhoods surrounding such businesses. Thus, the secondary effect the City seeks to remedy is certainly important enough to be considered a substantial government interest under *Renton's* time, place and manner test. Second, the studies relied upon by the City in enacting the Ordinance are relevant to the problem of regulating secondary effects, such as crime. The Plaintiff's rebuttal evidence, however substantial and credible, does not rise to the level of casting "direct doubt" on the City's rationale for the Ordinance. Under the *Alameda Books*[15] test, DVD neither demonstrates that the City's evidence does not support its rationale nor does it dispute the factual findings of the many studies relied upon by the City. The Seventh Circuit has upheld the use of studies and factual conclusions from other towns and places, regardless how remote in time and place they are from the locale at issue, as evidence of a reasonable basis for enacting an ordinance. *See, e.g., G.M. Enter., Inc. v. Town of St.*

with "calls for service" to Blockbuster Video and Hollywood Video, which do not. Pl.'s Reply Br., Embry Aff., Docket # 84.

**14.** Def.'s Aff. of Marcey Wisman, Exhibit B (part 3); Docket # 104.

**15.** "This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support its rationale for its ordinance." If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evi-

dence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the *Renton* standard. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (plurality opinion).

**1022**

*Joseph, Wis.,* 350 F.3d 631, 640 (7th Cir. 2003); *R.V.S., L.L.C. v. City of Rockford,* 361 F.3d 402, 412 (7th Cir.2004); *Ben's Bar, Inc. v. Village of Somerset,* 316 F.3d 702 (7th Cir.2003). After all, says the Supreme Court, "as a general matter, courts should not be in the business of second-guessing fact-bound empirical assessments of city planners." *Alameda Books,* 535 U.S. at 451, 122 S.Ct. 1728.

### 2. *Narrowly Tailored Restrictions and Alternative Channels of Communication.*

Our analysis does not end here, however. For the Ordinance to be a lawful time, place and manner regulation of sexually oriented businesses, the *Renton* test further requires that the provisions of the Ordinance must be narrowly tailored to prevent the harms featured in the secondary effects studies. The "narrowly tailored" test is an effort to ensure that, given a genuine nexus between the purpose of an Ordinance that regulates First Amendment speech and the Ordinance itself, the law not be broader than necessary to achieve the City's goal.

■ Having concluded that the City has expressed a specific and articulable concern it seeks to address (ambient criminal activity, for the most part) by enacting a time, place and manner regulation, we move to consider whether the location restrictions in Section 3(a) are sufficiently narrowly tailored to advance the City's interest without burdening substantially more speech than is necessary. *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). *See also, Alameda Books,* 535 U.S. at 445, 122 S.Ct. 1728 (Kennedy, J., concurring) (explaining that "[a] zoning measure can be consistent with the First Amendment if it is likely to cause a significant decrease in secondary effects and a trivial decrease in the quantity of speech)." A measure of the burden on protected speech is whether alternative channels of communication exist in the community affected by the regulation.[16]

Our November 2004 evidentiary hearing focused on the City's substantial government interest in addressing the potential for increased criminal activity in the immediate vicinity of adult entertainment businesses. To this end, the City's expert discussed the increased likelihood of attracting criminals who prey on the clientele, as discussed above. Dr. McCleary also expressed concern for the plaintiff's "privacy fence," for example, explaining that patrolling police officers could not adequately protect DVD's patrons because the tall, front fence would interfere with their line of sight. Significantly, this crime risk is not addressed by the Ordinance, which has no provision disallowing fences or other line-of-sight obstructions. Similarly, ostensibly to prevent criminal activity in neighborhoods, the Ordinance broadly restricts adult businesses from locating near dwellings, but not specifically *occupied* dwellings, which would clearly be a more narrowly tailored restriction. Further, rather than impose a wholesale ban on adult bookstores located near houses of worship, the Ordinance would better satisfy the "narrowly tailored" requirement if it were to restrict the bookstores' hours of operation to exclude Sundays or such other times when the nearby religious establishments are frequented by worshipers.

**16.** In conducting this analysis, we have well in mind that the Seventh Circuit has also stated that "[n]arrow tailoring" does not require the restrictions to be the least restrictive means of serving [the city's] content-neutral interests. *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 1002 (7th Cir.2002) (upholding some subportions of a sexually oriented businesses ordinance as narrowly tailored while finding that another subportion was broader than necessary to achieve the city's goals of combating adverse secondary effects).

We reference these more narrowly tailored restrictions for the reason that if the city is concerned with limiting criminal activity as an adverse secondary effect of adult businesses, and chooses to deal with the problem through zoning restrictions, then it must draw those regulations sufficiently narrowly to address the feared harm but without burdening unduly the protected activity.

As it currently stands, these restrictions apply to the only existing adult bookstore in New Albany, which obviously means that the constitutionally protected speech will be substantially burdened since there are no alternative channels for the sale and rental of adult materials by an avowedly adult entertainment business. The City argues that "the fact that some pornography is sold in convenience stores and small rooms in video stores simply proves that the City has not engaged in *content-based censorship of pornography*." [17] Def.'s Post–Hearing Br. at 4. This argument strikes us as patently disingenuous; after all, we are applying the *Renton* standard to a time, place and manner ordinance specifically aimed at the adult entertainment business; thus, the only acceptable alternative avenue for the sale or rental of the adult materials is another actual adult bookstore.[18]

█ We are of the view that DVD has demonstrated a likelihood of prevailing on the merits of its claim by proving that the location restrictions in the Ordinance are not narrowly tailored to meet the City's interests without burdening substantially more speech than is necessary. Thus, we shall grant the motion to enjoin the enforcement of the Ordinance on this basis.

**B. The Applicability of the Amortization Provision of the Ordinance to Plaintiff.**

The Ordinance makes allowance for an existing non-conforming adult entertainment business to continue to operate for two years in order to recoup its economic investment in that location. The provision reads, in pertinent part:

A pre-existing "Sexually Oriented Business," lawfully existing in all respects prior to the effective date of this ordinance, may continue to operate for two (2) years following that date in order to make a reasonable recoupment of its investment in its current location.

Ordinance G–04–10, Section 4(A).

The only question for the court to resolve is whether Plaintiff is likely to suc-

---

**17.** The City refers to the Dairy Mart convenience store located in the same neighborhood as DVD, about which we heard testimony in the first evidentiary hearing, and the mainstream video stores J & J and Movie Gallery, about which we heard testimony in November. *See* Caroline Embry Affidavit, Docket # 84, Attachment # 1.

**18.** In addition, when this litigation commenced, the only legislation addressing a retail store such as DVD was Resolution R–04–10, a six month moratorium on the opening and operation of sexually oriented businesses. The moratorium stated, in pertinent part:

"The City Council hereby institutes a moratorium to temporarily prohibit such business from opening or locating in the City of New Albany. This moratorium will take effect immediately ... This Resolution is Approved and Adopted this 19th day of February 2004. ... Be it Further Resolved that: the New Albany City Plan Commission and its Executive Director, Zoning Officer and other staff is further directed to withhold any and all Occupancy Permits and/or Improvement Location Permits for said business(es) from February 20, 2004, to July 20, 2004."

While it is not impossible to operate an adult bookstore in New Albany that conforms to the Ordinance, it is certainly true that the effect of Resolution R–04–10, superseded by Ordinance G–04–10, was and is to have banned DVD—the only adult entertainment business in town—from operation.

ceed in demonstrating that it is a legally pre-existing business prior to adoption of the Ordinance. The City argues that DVD never obtained an ILP from the zoning department, despite its being on notice that a change in use required such an application, and thus its abbreviated opening on February 19, 2004, was illegal and does not entitle it to "grandfathering" rights. Def.'s Br. in Opp'n at 20.

From the facts recited *supra* and as adduced at the May 5, 2004, evidentiary hearing, the following is known: (1) Plaintiff's application for a building permit to remodel an existing structure was submitted with blueprints on December 23, 2004, and approved a week later; (2) the permit authorized the remodeling of a "retail business in a commercial zone"; (3) Plaintiff verified that 601 W. Main Street was properly zoned for a retail business; (4) a form signed by then-Building Commissioner Gary House showed both the present and proposed use of the premises to be "commercial"; (4) the final inspection was scheduled for February 19, 2004, but did not take place at the discretion of the zoning department; (5) prior to February 19, 2004, Plaintiff did not apply for an ILP under § 156.41, requiring such when a "building or structure is changed in use" [19]; (6) at the direction of this court, Plaintiff applied for an ILP on May 14, 2004, was rejected, resolved the miscellaneous safety issues, submitted an amended application, and was again rejected on the basis of the intervening enactment of the Ordinance at issue in this litigation.

This evidence demonstrates Plaintiff's substantial compliance with the building and zoning regulations at the time it was slated to open for business. The resolution of the miscellaneous safety issues effectively eliminated any obstacle to receiving an ILP and, we presume, a final inspection and Certificate of Occupancy.

In addition, at the time Plaintiff applied for and received a remodeling permit (December 2003), the use it contemplated—retail adult materials—was conforming. Thus, the Ordinance could not be applied retroactively to defeat the ILP. *See Bd. of Zoning Appeals of City of Fort Wayne*, 164 Ind.App. 497, 329 N.E.2d 636, 642 (1975). Nor could the moratorium, once repealed, create the reason for treating DVD as a non-conforming use. *See, e.g. Sagamore Park v. City of Indianapolis*, 885 F.Supp. 1146, 1150–1151 (S.D.Ind.1994) (Barker, C.J.) (finding that a permit to construct a horse betting facility after moratorium was placed on such facilities was void, and such voiding entitled the plaintiff to have its ILP application reviewed in light of the valid enforceable ordinances in effect on the date of the application).

■ Given this evidence, we are of the view that Plaintiff qualifies as a pre-existing business which was in substantial compliance with the City's regulations prior to the enactment of the Ordinance. Thus, the amortization provision of the Ordinance would likely apply to Plaintiff.

For the reasons stated above, the Plaintiff has made a showing of likelihood of success of the merits of its claim in this respect as well. Therefore, Plaintiff's Second Motion for Preliminary Injunction should be granted.

### *Conclusion*

Plaintiff has sought a preliminary injunction against the City of New Albany, asking the Court to enjoin the enforcement of its adult entertainment ordinance, No. G–04–10, as to DVD. For the reasons set forth above, we find that the requirements of a preliminary injunction have been met

19. Docket # 19; Scott Wood Aff. ¶¶ 4–7.

and therefore *GRANT* Plaintiff's Motion for Injunctive Relief.