PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CENTRO TEPEYAC,

        *Plaintiff-Appellee,*

    v.

MONTGOMERY COUNTY;
MONTGOMERY COUNTY COUNCIL, In
its Capacity as the Montgomery
County Board of Health,

       *Defendants-Appellants,*

     and

MONTGOMERY COUNTY
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; MARC HANSEN,
Acting County Counsel,

       *Defendants.*

No. 11-1314

CENTRO TEPEYAC,

                    *Plaintiff-Appellant,*

                    v.

MONTGOMERY COUNTY;
MONTGOMERY COUNTY COUNCIL, In
its Capacity as the Montgomery
County Board of Health,

                    *Defendants-Appellees,*                No. 11-1336

                    and

MONTGOMERY COUNTY
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; MARC HANSEN,
Acting County Counsel,

                    *Defendants.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Chief District Judge.
(8:10-cv-01259-DKC)

Argued: March 23, 2012

Decided: June 27, 2012

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Affirmed in part and reversed in part by published opinion.
Judge Niemeyer wrote the opinion, in which Judge Agee
joined. Judge King wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Clifford Lee Royalty, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellants/Cross-Appellees. Mark L. Rienzi, COLUMBUS SCHOOL OF LAW, Catholic University of America, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Marc P. Hansen, County Attorney, Edward B. Lattner, Chief, Division of Human Resources & Appeals, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellants/Cross-Appellees. Steven H. Aden, Matthew S. Bowman, M. Casey Mattox, ALLIANCE DEFENSE FUND, Washington, D.C.; Robert Destro, COLUMBUS SCHOOL OF LAW, Catholic University of America, Washington, D.C.; John R. Garza, GARZA, REGAN & ASSOCIATES, Rockville, Maryland; Robert Michael, SHADOAN, MICHAEL & WELLS LLP, Rockville, Maryland, for Appellee/Cross-Appellant.

## OPINION

NIEMEYER, Circuit Judge:

Centro Tepeyac, a Montgomery County nonprofit corporation that provides pregnancy services but does not refer for or provide abortions, commenced this action against Montgomery County, Maryland, the Montgomery County Council, the Montgomery County Department of Health and Human Services, and Marc Hansen, the acting County Counsel (collectively, "Montgomery County" or "the County"), challenging the constitutionality of Montgomery County Resolution No. 16-1252. In its complaint, it contended that in compelling speech, the resolution violates its free speech rights under the First and Fourteenth Amendments to the U.S. Constitution.

Resolution 16-1252 requires "limited service pregnancy resource centers,"* such as Centro Tepeyac, to display a sign

---

\*A "limited service pregnancy resource center" is defined as "an organization, center or individual" that: "has a primary purpose to provide

on their premises stating (1) "the Center does not have a licensed medical professional on staff"; and (2) "the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." The sign must be "written in English and Spanish," "easily readable," and "conspicuously posted." Violation of Resolution 16-1252 is punishable as a "Class A civil violation," which may be enforced by a court action or by a civil citation, and under Montgomery County law, each day of a continuing Class A civil violation is a separate offense. *See* Montgomery County, Md. Code §§ 1-19, 1-20(c).

For relief, Centro Tepeyac sought a declaratory judgment that Resolution 16-1252 is unconstitutional and preliminary and permanent injunctive relief against its enforcement.

Applying strict scrutiny, the district court entered an order dated March 15, 2011, denying Centro Tepeyac's motion for a preliminary injunction as to the first statement required by Resolution 16-1252—"the Center does not have a licensed medical professional on staff"—and granting its motion as to the second mandated statement—"the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." The court concluded that the first statement could likely be justified under the strict scrutiny standard but that the second statement compelled "unneeded speech" and therefore would not be "the least restrictive means of achieving a relevant government interest."

Montgomery County appealed the district court's preliminary injunction prohibiting enforcement of the second mandated statement, and Centro Tepeyac cross-appealed the

pregnancy-related services"; "does not have a licensed medical professional on staff"; and "provides information about pregnancy-related services, for a fee or as a free service."

district court's denial of its motion for an injunction with respect to the first mandated statement. For the reasons given in our decision today in *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, ___ F.3d ___, No. 11-1111 (4th Cir. June 27, 2012), we affirm the district court's entry of a preliminary injunction and reverse its denial of the preliminary injunction requested by Centro Tepeyac with respect to the first mandated statement.

On Montgomery County's appeal, we conclude that strict scrutiny is appropriate because Resolution 16-1252 compels noncommercial speech. And, as we found with respect to the ordinance in *Greater Baltimore Center*, the second statement mandated by the resolution cannot withstand such scrutiny because it is not narrowly tailored. If Montgomery County wishes to "encourage[ ] women who are or may be pregnant to consult with a licensed health care provider," it must, at a minimum, first do so using its own voice. *See Greater Baltimore Center*, ___ F.3d at ___, slip op. at 36-38.

On Centro Tepeyac's cross-appeal, we reverse the district court's denial of injunctive relief with respect to the first mandated statement—"the Center does not have a licensed medical professional on staff." The district court concluded that mandating that statement was likely permissible because the statement "does not require any other specific message and in neutral language states the truth." This basis for approving the compelled speech, however, does not apply the governing standards that have been announced by the Supreme Court. As the Court has explained, even supposedly neutral and fact-based compelled disclosures can imperil free speech. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988). The *Riley* Court noted, "[T]he government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listeners." *Id.* at 791. Thus, while the first mandated statement of Resolution 16-1252 may impose a comparatively less severe

First Amendment burden, it still amounts to an impermissible government control of speech. The government-mandated statement, which must be posted "conspicuously" on a pregnancy center's wall, suggests to potential clients that the center is not to be trusted and that a pregnancy center's services, like religious counseling or job placement assistance, will usually be inferior to those offered by medical professionals. To be sure, Montgomery County is entitled to believe that pregnancy is first and foremost a medical condition, but it may not compel unwilling speakers to express that view.

Like the ordinance in *Greater Baltimore Center*, the first mandated statement in Resolution 16-1252 also suffers from serious underinclusiveness. Although underinclusive government regulations are often permissible, they pose a special problem in the First Amendment context because such regulations "raise[ ] serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2740 (2011); *see also City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) ("[A]n exemption from an otherwise permissible regulation of speech may represent a governmental attempt to give one side of a debatable public question an advantage in expressing its views to the people" (internal quotation marks omitted)). In this case, pregnancy centers are singled out for disfavored treatment while many other sources that pregnant women may consult for advice—Internet sites, bookstores, or houses of worship—are left unregulated, regardless of whether the advice they give comes from a "licensed medical professional." Where, as here, the government seeks to burden speech in the name of some public interest, it must "demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly." *Fla. Star v. B.J.F.*, 491 U.S. 524, 540 (1989). The County has failed to follow this requirement.

Finally, we note that the goals of the "no licensed medical professional" disclosure could readily be achieved through

less speech-restrictive methods. Such methods might include a more vigorous enforcement of laws against practicing medicine without a license. Or the County could simply publicize the names of the small number of pregnancy centers within its jurisdiction and explain that the centers do not employ doctors. Without first trying these or similar options, the County may not adopt a speech-restrictive strategy. *See Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 373 (2002).

Accordingly, we affirm the district court's order, dated March 15, 2011, to the extent that it grants Centro Tepeyac's motion for a preliminary injunction and reverse to the extent that it denies Centro Tepeyac's requested preliminary injunction.

*It is so ordered.*

KING, Circuit Judge, dissenting:

I am somewhat bemused by the panel majority's resoluteness in deciding that an innocuous and truthful disclaimer — "the Center does not have a licensed medical professional on staff" — patently offends the First Amendment. Equally disconcerting, the majority makes this conclusion — concerning the first statement prescribed by the Resolution — in apparent disregard for the deference accorded to a district court in ruling on a preliminary injunction request. That is, "regardless of whether [we] would, in the first instance, have decided the matter differently," the court's discretionary decision to grant or deny an injunction request "will not be disturbed on appeal unless the record shows an abuse of that discretion." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989). Had I been the trial judge entertaining the injunction request in the first instance, I may well have denied it, not only as to the first statement, but also as to the second one (that "the Montgomery County Health Officer encourages women who are or may be pregnant to consult a licensed health care provider"). Regarding either statement, however,

I am not at all left with the "definite and firm conviction" that the court "abuse[d] its discretion by applying an incorrect preliminary injunction standard, by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." *Id.* (internal quotation marks omitted).

The majority contends that the district court misapplied the Supreme Court's governing standards concerning compelled speech by making a preliminary finding that the first statement "does not require any other specific message and in neutral language states the truth." *See Centro Tepeyac v. Montgomery Cnty.*, 779 F. Supp. 2d 456, 471 (D. Md. 2011). My colleagues observe that the Supreme Court has recognized that even "neutral and fact-based compelled disclosures can imperil free speech." *Ante* at 5 (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988)). True enough, but the district court concluded that the first statement does not unconstitutionally imperil free speech. To be sure, the majority may disagree with that legal conclusion. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 567 (1995) (observing that we review de novo legal conclusions and mixed questions of law and fact concerning First Amendment claims). In fairness, however, the majority does not fault the district court for misapplying Supreme Court precedent. Rather, unlike the district court, the majority reads the first statement as conveying the subjective message that a pregnancy center "is not to be trusted," or that a center's "religious counseling or job placement assistance" services are "inferior to [services] offered by medical professionals." *Ante* at 6.

Put simply, I cannot identify in the first statement the messages ascribed by the majority — without contravening the cardinal rule of construction that "we give the words of a statute their plain and ordinary meaning." *See Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010) (Agee, J.) (internal quotation marks omitted). The Supreme Court instructed long

ago that "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925). Of course, because we are dealing with a disclaimer, context matters. *See Riley*, 487 U.S. at 796 (instructing that consideration be given to "the nature of the speech taken as a whole and the effect of the compelled statement thereon"). But to borrow the majority's example, there is no reason to believe that a pregnant woman in need of religious counseling or a job would be instinctively distrustful or think less of a pregnancy center just because it does not have a licensed medical professional on staff. The disclaimer would cause only those women in need of medical services to reassess a pregnancy center's proficiency in that regard — the Resolution's intended effect. Indeed, if the Resolution were somehow ambiguous, "we must ascertain the interpretation . . . that best implements [the legislative] intent and gives effect to the [Resolution's] purpose." *See Long v. Merrifield Town Ctr. Ltd. P'ship*, 611 F.3d 240, 244 (4th Cir. 2010) (Niemeyer, J.). The County's intent with respect to the Resolution was clear — to promote the health of women by ensuring that they have access to medical services, as reflected in the Resolution's stated purpose:

> The Board of Health's concern is that clients may be misled into believing that a Center is providing medical services when it is not. Clients could therefore neglect to take action (such as consulting a doctor) that would protect their health or prevent adverse consequences, including disease, to the client or the pregnancy.

J.A. 198.[1]

---

[1]Citations herein to "J.A.___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

The majority also concludes that the district court's strict scrutiny analysis was faulty with respect to the narrow tailoring requirement. Once again, however, the majority merely disagrees with the court's assessment that the Resolution's first statement is narrowly tailored without identifying exactly how the court misapprehended the law. In my view, the majority simply disagrees with the ruling of the district court, believing instead that the first statement is underinclusive and not the least restrictive means of achieving the County's compelling interests. Underinclusiveness is problematic in this case, the majority explains, because "pregnancy centers are singled out for disfavored treatment while many other sources that pregnant women may consult for advice — internet sites, bookstores, or houses of worship — are left unregulated, regardless of whether the advice they give comes from a 'licensed medical professional.'" *Ante* at 6. That explanation betrays the majority's staunch hostility to the Resolution, but it has no application here.

The district court made no finding that the first statement is viewpoint discriminatory.[2] The majority nevertheless concludes — without reference to the legislative record or to any evidence whatsoever — that the Resolution disfavors the viewpoint of pregnancy centers, apparently because it does not also compel internet websites, bookstores, and houses of worship to disclose that they have no licensed medical professional on staff. But the County did not receive reports or evidence that pregnant women were being deceived into believing that internet websites, bookstores, and houses of worship were providing medical services, such as abortions.

---

[2]The district court did conclude that the Resolution "is not 'content-neutral'" because the "disclosure requirements are activated in part by a particular message" and "triggered by the 'provision of information about pregnancy-related services.'" *Centro Tepeyac*, 779 F. Supp. 2d at 462 n.5. But, of course, "viewpoint-neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis." *Baugh v. Judicial Inquiry & Review Comm'n*, 907 F.2d 440, 444 (4th Cir. 1990).

Rather, the County heard from multiple speakers relating their experiences with pregnancy centers and received detailed reports documenting false and misleading information provided by pregnancy centers. Moreover, the County "had an obligation to deal with existing public health problems, without addressing the likelihood of deception from every possible source of information available to pregnant women." *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, No. 11-1111, ___ F.3d ___, ___ (4th Cir. 2012) (King, J., dissenting) (citing *Buckley v. Valeo*, 424 U.S. 1, 105 (1976) (observing that a "statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" (citations and internal quotation marks omitted))).

Finally, the district court committed no error regarding least restrictive alternatives. Significantly, my good colleagues in the majority point to nothing in this limited record to demonstrate that their proposed alternatives would be least restrictive, yet "*as effective* in achieving the [Resolution's] legitimate purpose." *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997) (emphasis added). Publicizing "the names of . . . the centers [that] do not employ doctors," as the majority suggests, *ante* at 7, would "not ensure that every woman who visits a . . . pregnancy center will be apprised of the services offered there, at a time when such information is most needed." *See Greater Balt. Ctr.*, ___ F.3d at ___ (King, J., dissenting). Likewise, "[i]nadequate or unenforceable . . . statutes, problems of proof, and scarcity of resources," *id.*, may significantly hamper the majority's suggested "enforcement of laws against practicing medicine without a license," *ante* at 6-7.

In any event, the district court, unlike the majority, properly constrained itself to the record. *See Centro Tepeyac*, 779 F.

Supp. 2d at 471 (concluding that "the record is at least color-able at this stage to suggest that the [first statement] is nar-rowly tailored to meet the [compelling] interest").**[3]** The court was certainly cognizant of some of the proposed alternatives to the Resolution's second statement. *See id.* at 469 n.9 (observing that "options less restrictive than compelled speech could be used to encourage pregnant women to see a licensed medical professional[, including] post[ing] notices encourag-ing women to see a doctor . . . or launch[ing] a public aware-ness campaign"). Nevertheless, based on the evidence before it, the court determined that those alternatives were not neces-sarily less restrictive or as effective as the first statement — or, at least, that Centro Tepeyac had failed to make the required "clear showing" that it was "likely to succeed on the merits" with respect to narrow tailoring, *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). Indeed, Centro Tepeyac did not propose any less restrictive alterna-tives until the hearing on the parties' respective motions. *See* J.A. 168. Because narrow tailoring usually demands "a fact specific and situation specific inquiry," *see Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006), the record concern-ing the alternatives was inadequate to warrant an injunction at that point in the litigation, *see Beal v. Stern*, 184 F.3d 117, 128-30 (2d Cir. 1999) (concluding that appellants had not shown likelihood of success for injunction request where,

---

**[3]**In stark contrast to the district court's approach in *Greater Baltimore Center* — i.e., awarding summary judgment and permanently enjoining a city ordinance based on an undeveloped record — the district court in this case appreciated that, in the absence of further factual development, the free speech claim could not be resolved solely on the County's motion to dismiss or, alternatively, for summary judgment and Centro Tepeyac's preliminary injunction motion. For example, the court observed the cur-rent absence (but not future impossibility) of evidence that the Resolution regulates commercial or professional speech. *See Centro Tepeyac*, 779 F. Supp. 2d at 463, 467. The court also recognized that the County was enti-tled to satisfy judicial scrutiny with discoverable evidence. *See id.* at 468. Indeed, Centro Tepeyac itself recognized the need for discovery in oppos-ing the County's motion to dismiss.

inter alia, there was insufficient evidence to determine whether means chosen for regulation were narrowly tailored); *see also New Albany DVD, LLC v. City of New Albany, Ind.*, 581 F.3d 556, 561 (7th Cir. 2009) (vacating entry of injunction and remanding to district court for evidentiary hearing to determine whether city could satisfy intermediate scrutiny).

Accordingly, and in recognition of the proposition that injunction requests are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances," *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (internal quotation marks omitted), the district court did not abuse its discretion in ruling as it did.

Because I would affirm the rulings of the district court, I respectfully dissent.