In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1500

ANNEX BOOKS, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF INDIANAPOLIS, INDIANA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-00918-SEB-TAB — **Sarah Evans Barker**, *Judge*.

ARGUED JANUARY 15, 2014 — DECIDED JANUARY 24, 2014

Before FLAUM, EASTERBROOK, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Supreme Court has held
that state and local governments may regulate adult estab-
lishments by using time, place, and manner restrictions to
reduce the secondary effects of those businesses on third
parties, but may not regulate them to restrict the dissemina-
tion of speech disapproved by local residents. *Los Angeles v.
Alameda Books, Inc.*, 535 U.S. 425 (2002); *Renton v. Playtime*

*Theatres, Inc.*, 475 U.S. 41 (1986); see also, e.g., *Illinois One News, Inc. v. Marshall*, 477 F.3d 461, 463 (7th Cir. 2007).

Indianapolis requires adult bookstores to remain closed between the hours of midnight and 10 a.m. every day, and all day Sunday. Other retail businesses are not subject to these restrictions. In earlier rounds of this litigation, Indianapolis contended that closure would curtail secondary effects, but we concluded that the evidence it offered was weak, contested in material respects, or concerned different kinds of businesses or different kinds of laws, such as minimum distances between adult outlets rather than closure. See 581 F.3d 460 (7th Cir. 2009); 624 F.3d 368 (7th Cir. 2010). The district court then held a trial. Indianapolis gave a single justification: fewer armed robberies at or near adult bookstores. The district court found this adequate and entered judgment for the City. 926 F. Supp. 2d 1039 (S.D. Ind. 2013).

The current justification is weak as a statistical matter. The City did not use a multivariate regression to control for other potentially important variables, such as the presence of late-night taverns. The change in the number of armed robberies is small; the difference is not statistically significant. The data do not show that robberies are more likely at adult bookstores than at other late-night retail outlets, such as liquor stores, pharmacies, and convenience stores, that are not subject to the closing hours imposed on bookstores. And most of the harm of armed robberies falls on the bookstores (and their patrons) rather than on strangers. The secondary-effects approach endorsed by *Alameda Books* and *Playtime Theatres* permits governments to protect persons who want nothing to do with dirty books from harms created by adult businesses; the Supreme Court has not endorsed an ap-

proach under which governments can close bookstores in order to reduce crime directed against businesses that knowingly accept the risk of being robbed, or persons who voluntarily frequent their premises. As we remarked in *New Albany DVD, LLC v. New Albany*, 581 F.3d 556 (7th Cir. 2009), adults may decide for themselves what risks to run by the literature they choose, and cities must protect readers from robbers rather than reduce risks by closing bookstores. Cf. *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748 (1976) (fear that readers will act unwisely does not justify restricting otherwise-lawful speech).

That the City's regulation takes the form of closure is the nub of the problem. Justice Kennedy, whose vote was essential to the disposition of *Alameda Books*, remarked that "a city may not regulate the secondary effects of speech by suppressing the speech itself." 535 U.S. at 445 (opinion concurring in the judgment). Yet that's what Indianapolis has done. The benefits come from closure: shuttered shops can't be robbed at gunpoint, and they lack customers who could be mugged. If that sort of benefit were enough to justify closure, then a city could forbid adult bookstores altogether.

Indianapolis observes that customers are free to patronize stores during the hours they are allowed to be open. As the City depicts things, there is no loss to speech—anyone who wants any magazine, book, or movie can get it, eventually—and some gain in the reduction of armed robberies. With even a little gain on one side, and no loss on the other, the City maintains that it must prevail.

To test the proposition that delay in obtaining reading matter does not cause loss, we put a hypothetical at oral argument. Suppose Indianapolis were to prohibit the distribu-

tion of newspapers on Sundays. (Just newspapers: our hypothetical law differs from a general Sunday-closing statute. See *McGowan v. Maryland*, 366 U.S. 420 (1961).) Closure could achieve multiple benefits, including a reduction in the number of traffic accidents (newspapers generate lots of traffic because trucks deliver newsprint to plants and printed papers throughout the region; home delivery carriers may drive their own cars); a reduction in robberies of paper deliverers, who may be on the street when few others are awake to protect them; and a reduction in the newspaper's carbon footprint and other pollutants. All the news (and ads) now in the Sunday paper could appear in Monday's paper, so readers would retain access, and anyone who wants up-to-the-minute news could get it on the Internet while avoiding accidents, robberies, and pollution. The lawyer representing Indianapolis was shocked at the idea, however; he proclaimed that the City could not do such a thing consistent with the first amendment.

What is the difference between preventing a newspaper from selling paper copies on Sunday (or before 10 a.m.) and preventing an adult bookstore from selling paper copies on Sunday (or before 10)? Not secondary effects: the harms to third parties caused by a newspaper likely exceed those caused by an adult bookstore. The difference lies in the content of the reading material. Indianapolis likes G-rated newspapers but not sexually oriented books, magazines, and movies. Yet neither *Alameda Books* nor *Playtime Theatres* permits units of government to stop the distribution of books because their content is objectionable, unless the material is obscene. See also, e.g., *United States v. Stevens*, 559 U.S. 460 (2010) ("crush videos" cannot be suppressed); *American Booksellers Association, Inc. v. Hudnut*, 771 F.2d 323 (7th Cir.

1985), affirmed summarily, 475 U.S. 1001 (1986) (material that is pornographic, but not obscene, cannot be suppressed). Indianapolis does not contend that any of the plaintiffs sells obscene material; it follows that objection to the plaintiffs' stock in trade cannot justify closure.

The judgment of the district court is reversed, and the case is remanded with instructions to enter an injunction against enforcement of the closure ordinance.